UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
PUERTO RICO GOVERNMENT JUDICIARY EMPLOYEES RETIREMENT SYSTEM ADMINISTRATION, CRAIG B. LAUB, J.D. PISUT and SANDRA REDFERN,

Plaintiffs,

v.

MARCUM, LLP, as successor to STONEFIELD JOSEPHSON, INC.,

Defendant.

This document relates to ALL ACTIONS
------------------------------------X

15 Civ. 1938 (DAB)
MEMORANDUM & ORDER

DEBORAH A. BATTS, United States District Judge.

## I. INTRODUCTION AND SUMMARY

On January 8, 2018, the Court held a Fairness Hearing to consider final certification of the Settlement Class and the substantive and procedural fairness of the terms of the Parties' Settlement, based on Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and For Attorneys' Fees, Reimbursement of Expenses, and Lead Plaintiff Awards. (Dkts. 20-29). At the hearing, the Court indicated that it would file this Memorandum and Order, setting out the Court's rationale for final certification of the Settlement Class and approval of the Settlement.

**A. Background**

**This Action arises from a securities fraud class action lawsuit against Defendant Marcum LLP ("Marcum") as the successor to Stonefield Josephson, Inc. ("Stonefield"), an independent public accounting firm. The Plaintiffs, the Puerto Rico Government Judiciary Employees Retirement System Administration, Craig B. Laub, J.D. Pisut and Sandra Redfern ("Plaintiffs"), allege that Defendant made a series of materially false and misleading statements or omissions when it signed off on registration and financial statements as auditor for Fuqi International, Inc. ("Fuqi") (Am. Compl. ¶ 3). Non-party Fuqi is a designer of high quality precious metal jewelry in China. Plaintiffs claim that, as financial auditor for Fuqi, Stonefield permitted Fuqi to file registration and financial statements that allegedly grossly overstated Fuqi's revenue and financial performance. Plaintiffs claim the disclosures were materially false and inaccurate, and that Stonefield failed to conduct proper due diligence during its auditing process. (Id. ¶ 3-9).**

**Fuqi's stock price dropped when it was revealed to the public that Fuqi had grossly misstated its numbers (Id. ¶¶ 7-8). This led to a series of enforcement actions filed by the SEC against Fuqi as well as separate private securities class actions filed by shareholders against Fuqi in 2010 ("Fuqi litigation"). Those actions did not name Stonefield/Marcum as a**

Defendant. The Parties in the Fuqi litigation actions settled in 2016 and this Court issued final approval of the Fuqi settlement on February 18, 2016. (See 10 Civ. 2515 (DAB), dkt. 115).

The instant action against Marcum was first filed on March 13, 2015. (dkt. 1). Plaintiffs allege that they were damaged when they purchased shares of Fuqi common stock at prices artificially inflated by the Defendant's materially false and misleading statements made during the Class Period (May 15, 2009 to March 27, 2011). The Subclass members allege that they were damaged when they purchased Fuqi common stock pursuant to a materially false Registration Statement, and Prospectus incorporated therein, issued in connection with Fuqi's 2009 secondary public offering. (See, e.g., Am. Compl. ¶ 87). The Class members seek remedies under the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder. The Subclass members seeks remedies under the Securities Act of 1933. (See id. ¶¶ 76-131).

B. Settlement

The Parties entered mediation on December 15, 2015 and reached a settlement in principle. On October 28, 2016, the parties moved for preliminary approval of the settlement (dkt. 11) and filed an Amended Complaint in connection with the proposed settlement (dkt. 10).

By Order dated May 30, 2017, this Court preliminarily approved the proposed settlement, preliminarily defined the Class and a Subclass, and authorized dissemination of the Settlement Notice. (dkt. 17.) The Settlement Class consists of all persons or entities who purchased or otherwise acquired Fuqi common stock between May 15, 2009, and March 27, 2011, and were purportedly damaged thereby. (Id.) The Subclass consists of all of those who purchased or otherwise acquired Fuqi common stock pursuant to or traceable to Fuqi's secondary public offering on or about July 22, 2009. (Id.) Excluded from the Class and Subclass are: Marcum, LLP, any agent, representative, predecessor, successor, subsidiary, affiliated entity, partner, limited liability partner or member, shareholder, director, officer of Marcum, member of the immediate families of the partners, limited liability partners or members, shareholders, directors, officers of Marcum, any entity in which Marcum has or had a legal controlling interest, and the legal representatives, heirs, successors, or assigns of Marcum. Also excluded from the Class are Fuqi, Yu Kwai Chong, Ching Wan Wong, Lie Xi Zhuang, Lily Lee Chen, Eileen B. Brody, Victor A. Hollander, Jeff Haiyong Liu, William Blair & Co., Oppenheimer & Co. Inc., and Cowen and Company (collectively, the "Fuqi Defendants"), the officers and directors of Fuqi, at all relevant times, members of their immediate families, any entity in which any Fuqi

**Defendant has or had a legal controlling interest, and the legal representatives, heirs, successors, or assigns of any Fuqi Defendant. (Id.)**

**The Settlement Agreement creates a common fund of $1,100,000 to be distributed pursuant to the Proposed Plan of Allocation after payment of or provision for expenses of notice and administration of the settlement funds, taxes, tax expenses, and any attorneys' fees, costs, expenses, and awards to Lead Plaintiffs as may be provided by the Court ("Net Settlement Fund"). (Decl. of Lawrence D. Levit In Support Of Lead Plaintiffs' Motion For Final Approval Of Settlement ("Levit Decl.") ¶ 67 (Dec. 4, 2017) (dkt. 22)). The Plan of Allocation contemplates that each authorized claimant will receive an amount equal to the authorized claimant's claims. (Id. ¶ 68.) Should the amount of the Net Settlement Fund not be sufficient to award payment of the total claim to each authorized claimant, the Plan Allocation contemplates that each authorized claimant will be paid the percentage of the Net Settlement Fund that each authorized claimant's claim bears to the total of the claims of all authorized claimants. (Id.)**

**C. Settlement Response**

The Claims Administrator sent out 72,129 notices in the aggregate to potential class members as of November 28, 2017. (Decl. of Brian Manigault re: Mailing of Notice and Proof of Claim; Exclusion Requests and Objections; and Report on Number of Claims Filed ¶ 4 (Dec. 4, 2017)). The Claims Administrator also published a Summary Notice of the Settlement in Investor's Business Daily and PR Newswire on July 10, 2017. (Id. ¶ 6). 3,953 claim packets were returned undeliverable without a forwarding address. (Id. ¶ 6.) 1,883 of those returned packets were re-mailed to an updated address found by the Claims Administrator. (Id.).

As of November 28, 2017, the Claims Administrator received 1,867 claims filed in response. These are in addition to the 9,135 claims filed previously in the Fuqi litigation. If a Settlement Member had previously submitted a claim form in the Fuqi litigation, they were informed in their Marcum notice that they did not need to submit a new claim form in the instant Marcum litigation. (Id. ¶ 14). With the exception of the exclusion of Marcum LLP and its directors and officers from the Marcum class, the classes and subclasses were defined identically in the Fuqi and Marcum litigations.

The Claims Administrator received no exclusion requests as of November 28, 2017. (Id. ¶ 10).

The Court received only one timely Objection to the settlement from Harry Wong, by letter dated September 2, 2017. (dkt. 18). In his letter, Mr. Wong objected to the settlement amount.

There have been no objections to the Plan of Allocation, Application for Attorneys' Fees and Reimbursement of Expenses and Lead Plaintiff Awards.

## II. Rulings

### A. Objections

Harry Wong objects to the settlement amount. (Letter of Harry Wong, dkt. 17 (Sept. 2, 2017)). The Court DENIES Mr. Wong's Objections. In his letter, Mr. Wong claims that a one million dollar claim amount is "ridiculous." (Id.) He claims that Fuqi International "lost over $225 million in cash through an unexplained overnight cash transfer out to another mysterious account." He requests "at least a ten million dollar total as a minimum settlement claim amount." (Id.)

It is unclear from Mr. Wong's letter why Plaintiffs' settlement amount with Marcum LLP, Fuqi's auditors, is insufficient. It is also unclear what role Marcum played in Fuqi's cash transfer. Rather, Mr. Wong seems only to name Fuqi International, a non-party in this litigation that previously settled with Class Plaintiffs for $7.5 million in 2016. The Fuqi

cash transfers Mr. Wong refers to (which were for $135 million, not $235 million), occurred one year after it had become clear that Fuqi had misstated its financial earnings and Marcum had allegedly signed off on such misstatements. (Pls.' Supp. Mem. in Further Support, of Lead Pl.'s Mot. For Final Approval of Settlement at 3, dkt. 24). Fuqi's stock price had already been trading at low levels after the initial disclosure of incorrect financials for nearly a year. (Id.) It is thus unclear from Mr. Wong's objection what role Marcum played in connection to the cash transfers and the alleged harm it caused investors. Plaintiffs acknowledge that the transfers themselves caused no financial loss to Fuqi, as the funds were paid back by the banks who received the funds by the end of the March 2011 quarter. (Id.)

Moreover, as for the substantive amount of the settlement, Mr. Wong does not articulate how the unknown reward after continuing on through litigation for years to come, outweighs the risk of collecting a $1.1 million claim amount today.

As the Supreme Court held in Wal-Mart, "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 118 (2d Cir. 2005) (internal citation omitted); see also Charron v. Pinnacle Grp. N.Y. LLC, 874 F. Supp. 2d 179, 208–09 (S.D.N.Y. 2012)

**("Additionally, the Class Representatives have not articulated why, other than a difference in dollars, double damages fundamentally undermine the fairness of the Settlement. Class Members who wished to pursue overcharge claims and who preferred to go for every last dollar, had ample opportunity to opt out of the Class; had they done so, they could have pursued treble damages."). Given that the Court received only one Objection, this fact supports the settlement's adequacy. Accordingly, Mr. Wong's Objection is DENIED.**

**B. Class Certification and Approval of the Settlement**

| **CLASS CERTIFICATION**<br>**In order to certify the class as defined by Plaintiffs the Court will consider the criteria of Federal Rule of Civil Procedure 23(a) and (b).** | | |
|---|---|---|
| **COURT FINDING** | **EVIDENCE FROM SUBMISSIONS** | **LEGAL REQUIREMENT(S) SATISFIED** |
| **The class is so numerous that joinder of all members is impracticable.** | Lead Pls.' Mem. For Final Approval at 21-22 ("[T]hroughout the Class Period, there were millions of shares of Fuqi common stock traded in the United States. Beneficial holders of the shares are believed to number in the tens of thousands and are geographically located throughout the United States and abroad, making | **FRCP 23(a)(1)** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | joinder impracticable.”).<br><br>See also Amended Compl. ¶ 28 (“The members of the Class are so numerous that joinder of all members is impracticable. There were 22,005,509 shares of common stock outstanding as of March 31, 2009. The members of the Subclass are also so numerous that joinder of all members is impracticable. There were 4,855,000 shares of common stock sold in the Secondary Offering.”). | |
| **The Court finds that there are questions of law or fact common to the class.** | Lead Pls.’ Mem. For Final Approval at 22 (“All Class Members are purchasers of Fuqi common stock during the Class Period, and allegedly sustained injury due to the artificial inflation of the price of | **FRCP 23(a)(2)** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | those securities that was caused by Defendants' alleged material misrepresentations throughout the Class Period. In addition, all Class Members make the same legal claims under the federal securities laws. Plaintiffs have alleged common issues of fact and law that affect all Class Members . . . ."). | |
| **The Court also finds that under Rule 23(b)(3), these questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.** | Lead Pls.' Mem. For Final Approval at 23-24 ("Plaintiffs allege that Defendant engaged in a common course of fraudulent conduct causing the artificial inflation of the price of Fuqi common stock. Proof of that common course of conduct relates to Defendant's liability as to all Class Members. . . . The Common questions include: (1) whether the federal securities laws were violated by Defendants' acts and omissions; (2) whether statements | **FRCP 23(b)(3)** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | made by Defendants during the Class Period misrepresented and/or omitted material facts about the business operations of Fuqi; (3) whether the market price of Fuqi common stock was artificially inflated during the Class Period due to the material misrepresentations and omissions; and (4) to what extent the members of the Settlement Class have sustained damages and the proper measure of damages.”). | |
| **The Court finds that the claims or defenses of the representative parties are typical of the claims or defenses of the class.** | Lead Pls.’ Mem. For Final Approval at 22 (“Plaintiffs’ interests are aligned with those of the Class as the factual and legal claims of Plaintiffs and the Class arise from the same nexus of operative facts and course of conduct by Defendant[].”). | **FRCP 23(a)(3)** |
| **The Court finds that the representative parties will fairly** | Lead Pls.’ Mem. For Final Approval at 23 (“Plaintiffs, like | **FRCP 23(a)(4)**<br><br>**Also satisfies** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| **and adequately protect the interests of the class.** | all Class Members, purchased Fuqi common stock at artificially inflated prices during the Class Period or in the Secondary Offering as a result of Defendant's alleged materially false and misleading statements and were damaged thereby. Plaintiffs have retained counsel who have successfully prosecuted numerous securities and other complex class actions in courts throughout the United States."). | **Goldberger Factor 4: The Quality of the Representation, and second half of Procedural Fairness standard: Class Counsel's Experience and Ability.** |
| **Having denied, supra, the sole objection to preliminary class certification, and having found that all of the criteria set forth in Federal Rule of Civil Procedure 23 are satisfied, THE CLASS CERTIFICATION IS HEREBY FINALLY CONFIRMED.** | | |

**FAIRNESS**

**Under Federal Rule of Civil Procedure 23(e), to grant final approval of a settlement, the Court must determine whether the proposed settlement is fair, reasonable and adequate. In making this determination, the Court must review both the procedural and substantive fairness of a proposed settlement. To find a settlement procedurally fair, the Court must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations, and that Plaintiffs' Counsel possessed the experience and ability, and engaged in the discovery necessary for effective representation of the classes' interests. To find a settlement substantively fair, the Court reviews the nine Grinnell Factors. See City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).**

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| **PROCEDURAL FAIRNESS** **The settlement resulted from "arm's-length negotiations." Class Counsel possessed the requisite amount of experience and ability, and the parties engaged in the discovery necessary for effective representation of the Classes' interests.** | **Arm's-Length Negotiations and Class Counsel's Experience and Ability** Lead Pls.' Mem. For Final Approval at 8-9 ("[O]n December 15, 2015, Plaintiffs and Defendant participated in a formal mediation in Newport Beach, California, before Judge Phillips. Following a full day of mediation, the Parties, with the assistance of Judge Phillips, ultimately reached agreement to settle the Action for $1.1 million. The mediation session included arguments by the parties regarding the strengths and weaknesses of the case and Plaintiffs' damages analysis. Thus, Judge Phillips' role in the settlement negotiations strongly supports a finding that the negotiations were conducted at arm's-length and without collusion. . . . Further, that all parties were represented throughout the Settlement negotiations by able counsel experienced in class action and securities litigation militates in favor of approving the Settlement.").<br><br>Id. at 8 ("Because the Settlement was negotiated at arm's-length by sophisticated and knowledgeable counsel before an experienced mediator, the process was fair to absent | **Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (quoting Manual For Complex Litigation (Third) § 30.42 (1995)).**<br><br>**D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (citing Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982)).**<br><br>**Also satisfies Grinnell Factor 3 (The Stage of the Proceedings and Amount of Discovery Completed) and Goldberger Factor 1 (Time** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | Class Members.”).<br><br>**The Parties have engaged in discovery necessary for effective representation of the Classes’ interests.** Id. at 12 (“Plaintiffs have conducted sufficient due diligence and discovery to properly evaluate the case and assess the adequacy of the Settlement. . . . Lead Counsel conducted . . . extensive interviews of a member of the Board’s Audit Committee during the relevant period, and outside counsel retained by the Audit Committee to investigate the cash transfer issues; and retain[ed] investigators that identified and interviewed former company employees. (Levit Decl. ¶¶ 5, 32, 41, 50, 77). Lead Counsel drafted extensive submissions in preparation for the mediation session, and also held discussions with Defendant’s counsel during the mediation session that crystallized for them the defenses that would be pressed if the case progressed. Plaintiffs also gained a sufficient understanding of the potentially recoverable damages during the mediation process.”). | **and Labor Expended by Counsel) and Factor 4 (Quality of the Representation).**<br><br>**City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| **<u>SUBSTANTIVE FAIRNESS</u>** **Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the nine <u>Grinnell</u> Factors:** | | |
| **(1) Litigation is complex, and would likely be costly and lengthy in duration. The Court finds <u>Grinnell</u> Factor 1 and <u>Goldberger</u> Factor 2 satisfied on these facts.** | **Complexity, Expense and Likely Duration** Lead Pls.' Mem. For Final Approval at 10 ("Defendant's adamant contention that Plaintiffs would not be able to establish liability and/or damages would likely have contributed to a lengthy and expensive litigation absent the proposed Settlement. Here, the securities claims advanced by Plaintiffs involved numerous complex factual issues relating to accounting."). | **<u>Grinnell</u> Factor 1: The complexity, expense and likely duration of the litigation.**<br><br>**Also satisfies <u>Goldberger</u> Factor 2: The magnitude and complexities of the litigation.** |
| **(2) The reaction of the class to the settlement has been positive.** | Lead Pls.' Mem. For Final Approval at 13 ("Angeion has monitored all mail that has been received and, as of November 28, 2017, Angeion has not received any | **<u>Grinnell</u> Factor 2: The reaction of the class to the settlement.**<br><br>**<u>D'Amato v.</u>** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
| --- | --- | --- |
| | exclusion requests from the Settlement. A small number of objections may 'be viewed as indicative of the adequacy of the settlement.' Wal-Mart, 396 F.3d at 118. The absence of opposition to the Settlement provides evidence of Class members' approval of its terms. Id."). | **Deutsche Bank, 236 F.3d 78, 86-87 (2d Cir. 2001) (finding that district court properly found that the small number of objections (eighteen objections and seventy-two requests for exclusions after 27,883 notices were sent) weighed in favor of settlement).** |
| **(3) Proceedings have progressed and sufficient discovery has been completed to understand Plaintiffs' claims and negotiate settlement terms.** | Lead Pls.' Mem. For Final Approval at 10-12 ("To date, Lead Counsel has investigated the claims by reviewing hundreds of thousands of documents produced by Defendants; conducting extensive interviews of a member of the Board's Audit Committee during the relevant period, and outside counsel retained by the Audit Committee to investigate the cash transfer issues; and retaining investigators that identified and interviewed former company employees."). | **Grinnell Factor 3: The stage of the proceedings and the amount of discovery completed.** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| **(4), (5), and (6) The risks of litigation – including establishing liability, establishing damages, and maintaining the class action through trial – are significant.** | Lead Pls.' Mem. For Final Approval at 15 ("As noted above, Defendant would have raised the following defenses to Plaintiffs' claims: (1) Defendant purportedly did not make any false statements; (2) Defendant supposedly did not make any material misstatements or omissions; (3) []the existence of material weaknesses in the Company' s internal controls had been adequately disclosed during the Class Period; (4) Defendant purportedly complied with the standard of care in consenting to the use of its 2008 Audit Report within Fuqi's financial statements; (5) Plaintiffs' claims were allegedly time-barred; (6) Defendant's consent to use its 2008 Audit Report within Fuqi's financial statements supposedly did not cause the losses claimed by Plaintiffs; and (7) Plaintiffs purportedly could not have met their burden to demonstrate that Defendant committed a violation of the Exchange Act. If Defendant were successful in any of these arguments, the Court or a jury could have determined that Plaintiffs were unable to recover any damages at all – or, if so, that any damages that | **<u>Grinnell</u> Factor 4: The risks of establishing liability.**<br><br>**<u>Grinnell</u> Factor 5: The risks of establishing damages.**<br><br>**<u>Grinnell</u> Factor 6: The risk of maintaining the class action through the trial.**<br><br>**The Court's findings on <u>Grinnell</u> Factors 4, 5 and 6 also satisfy <u>Goldberger</u> Factor 3: The risk of the litigation.** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | Plaintiffs claimed should have been significantly reduced. Moreover, even if any motion to dismiss were denied, discovery would likely be cumbersome. Many of the relevant documents were located in China and/or were in Chinese. . . . The determination of damages in this litigation, moreover, is a complex matter which would require the presentation of expert testimony.”<br><br>Id. at 16 (“The determination of damages in this litigation, moreover, is a complex matter which would require the presentation of expert testimony. As a result, the Class would ultimately face a “battle of experts” – a battle in which no party is ever assured to prevail. . . . ”).<br><br>Id. at 16 (“Had the Settlement not been reached, there is no assurance that Lead Plaintiff’s anticipated motion for class certification would be granted and/or that Class status, if granted, would be maintained, because a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time.”). | |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| **(7) Defendants' ability to withstand a greater judgment may be present, but this factor alone is not dispositive under Grinell.** | Lead Pls.' Mem. For Final Approval at 19 ("Courts have found that 'this factor alone does not prevent the Court from approving the Settlement where the other Grinnell factors are satisfied.' Telik, 576 F. Supp. 2d [at] 580. While Defendant may have the ability to pay a judgment, it also has strong defenses, and it may have been able to avoid all liability."). | **Grinnell Factor 7: The ability of the Defendants to withstand greater judgment.** |
| **(8) and (9) The settlement is reasonable in light of: (a) Plaintiffs' best possible recovery, and (b) the attendant risks of litigation.** | Lead Pls.' Mem. For Final Approval at 18 ("According to estimates by Lead Plaintiff's damages consultants, this recovery, along with the recovery in the Fuqi Litigation, represents approximately 5.6 – 6.9% of the Class' maximum provable damages, depending on certain liability issues Plaintiffs could or could not prove at trial. Thus, this Settlement in well within the range of the average recovery in shareholder litigation. . . . Finally, in analyzing the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road, without any further risk to the | **Grinnell Factor 8: The range of reasonableness of the settlement fund in light of the best possible recovery.**<br><br>**Grinnell Factor 9: The range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | Class. . . . This case could be expected to last several years had the Settlement not been reached.”). | |
| **Having considered the procedural and substantive factors, the Court finds the proposed settlement to be fair, reasonable and adequate under Federal Rule of Civil Procedure 23 and THE SETTLEMENT IS HEREBY APPROVED.** **The Court also approves as Final the proposed Plan of Allocation.** | | |

**C. Attorneys’ Fees, Expenses, and Lead Plaintiff Awards**

District Courts have a duty “to act as a fiduciary who must serve as a guardian of the rights of absent class members,” City of Detroit v. Grinnell Corp., 560 F.2d 1093, 1099 (2d Cir. 1977). This duty involves a “searching assessment” of attorneys' fees, “eschew[ing] any rubber stamp approval in favor of an independent evaluation.” Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 52 (2d Cir. 2000); Grinnell 495 F.2d at 462. “[T]he fees awarded in common fund cases may not exceed what is ‘reasonable’ under the circumstances. . . . What constitutes a reasonable fee is properly committed to the sound discretion of the district court.” Goldberger, 209 F.3d at 48 (internal citation omitted). The Second Circuit has made repeatedly clear that “no presumption applies to the percentage of a common

fund." McDaniel v. City of Schenectady, 595 F.3d 411, 425–26 (2d Cir. 2010).

Counsel has requested $366,300, or approximately one-third of the settlement fund, in attorneys fees. (Memo of Law 3, 25, dkt. 23). At the Fairness Hearing, the Court expressed its concern to Plaintiffs' counsel that, based on the record before it, counsel's request for attorneys fees in the Marcum litigation may have inadvertently included work already performed (and paid for) in the Fuqi litigation. Plaintiffs' counsel previously received an attorneys fee reward for work related to the Fuqi litigation in 2015 (which was taken out of the Fuqi settlement fund).

At the Fairness Hearing, Plaintiffs' counsel affirmed that no double billing occurred, and expressed their desire to supplement their submissions to the Court to include detailed billing records of work performed in the Marcum and Fuqi litigations. The Court permitted them to do so, and received Counsels' supplemental submissions via ECF on January 19, 2018. (Dkts. 32-34) and billing records for in camera review on January 24, 2018.

The Court has carefully reviewed counsels' billing records and descriptions. Based on these submissions, the Court is satisfied that Counsel is seeking compensation only for work performed for the Marcum litigation, not the Fuqi litigation.

(See Levitt Decl. in Further Support for Attorneys Fees, dkt. 32, ¶ 3 (describing specific work Plaintiffs' counsel performed with auditors, the Defendants in the instant action)). In particular, Plaintiffs' counsel notes that the vast majority of work billed in the Marcum litigation occurred after January 15, 2015, when the Fuqi Plaintiffs had filed their Initial Motion for Final Approval of Settlement in the Fuqi Litigation. Those January 2015 papers included a request for attorneys fees for work performed in the Fuqi litigation. Therefore, it is highly unlikely that any double billing occurred in the instant Motion, because the majority of time billed in Marcum occurred after time had been submitted in the Fuqi litigation. This fact, coupled with the fact that Counsels' Marcum records appear to contain descriptions of tasks specific to the Marcum litigation, address the Court's prior concerns.

Accordingly, the Court accepts counsels' request for a 33.33% attorneys fees award of $366,300, pursuant to the Goldberger analysis below.

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| To ensure the appropriateness of attorneys' fees and costs, the Court will now review the | | |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| six Goldberger criteria. Goldberger v. Integrated Res. Inc., 209 F.3d 43, 50 (2d Cir. 2000).<br><br>ATTORNEYS' FEES<br><br>The Second Circuit has recognized that a district court may calculate reasonable attorney fees by either the lodestar method or the percentage method. Goldberger, 209 F.3d at 50. The proposed attorneys' fee, calculated here according to the percentage method, is reasonable. No matter which method is chosen, District Courts should be guided by the six traditional Goldberger criteria in determining a reasonable common fund fee. Goldberger, 209 F.3d at 50. | Lead Pl.'s Mem. In Support of Attorneys' Fees at 25 ("Plaintiffs respectfully request that this Court grant Plaintiffs' motion for an award of attorneys' fees of one-third of the Settlement Fund equal to $366,300.00 plus reimbursement of expenses in the amount of $24,523.02 and awards to Lead Plaintiff of $3,000 to the Puerto Rico Government Employees and Judiciary Retirement Systems Administration and of $1,500 each to Craig B. Laub, J.D. Pisut and Sandra Redfern."). | |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| **The six Goldberger Factors are:** | | |
| **(1) Counsel has expended considerable time and labor on behalf of Plaintiffs.** | Lead Pl.'s Mem. In Support of Attorneys' Fees at 6-7 ("From the inception of this case, Lead Counsel and Additional Counsel have spent over 594 hours in prosecuting this case on behalf of the Settlement Class. . . . . [D]uring the course of this Action and the Fuqi Litigation – which contributed to the investigation and efforts in reaching a settlement in this Action – Plaintiffs' Counsel: (a) conducted an extensive investigation . . .; (b) researched and prepared an initial complaint, a Consolidated Complaint and an Amended Complaint; (c) consulted with experienced damages and stock market efficiency financial experts who prepared and provided a damages analysis that estimated aggregate damages, and assisted Lead Counsel's preparation for the mediation; . . . (f) consulted with an accounting expert regarding the Company's restatement and its internal control issues; (g) interviewed outside counsel retained by Fuqi's Audit Committee to | **<u>Goldberger</u> Factor 1: The time and labor expended by counsel.** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | investigate the cash transfer issue; (h) interviewed a member of Fuqi's Board who was a member of the Audit Committee; (i) participated in a mediation session on December 15, 2015; (j) prepared and submitted to the Mediator, prior to the mediation, a detailed mediation statement, which included citations to and submission of documents produced from Fuqi and other materials that Plaintiffs' Counsel believed supported Plaintiffs' positions, as well as an evaluation of the legal principles that Plaintiffs believed applied to their positions; (k) researched the law applicable to conducting discovery in China and assessed the possibilities of collecting on any judgment; (l) began selecting and organizing documents applicable to possible deponents and analyzed anticipated testimony from each witness; (m) consulted with Plaintiffs' damages expert in devising the Plan of Allocation; (n) negotiated and prepared the final settlement documents; and (o) worked and coordinated with the Angeion Group ("Angeion") to assure timely mailing of notices and effective and efficient | |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | claims administration.”). | |
| **(2) The litigation is complex and of large magnitude.** | Lead Pl.’s Mem. In Support of Attorneys’ Fees at 8-9 (“Plaintiffs advanced numerous complex legal and factual issues under the federal securities laws, each of which would require extensive testimony by both fact and expert witnesses. . . . [T]he expense and length of the Action would have been further exacerbated because Defendant would have undoubtedly filed motions to dismiss and for summary judgment, and likely would have vigorously opposed Plaintiffs’ class certification motion. . . . [A] trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditures of judicial resources. . . . In addition, this Action was vigorously contested, and Defendant was represented by very experienced and qualified attorneys.”). | **<u>Goldberger</u> Factor 2: The magnitude and complexities of the litigation.**<br><br>**The Court’s findings regarding <u>Grinnell</u> Factors (3)-(6) also support <u>Goldberger</u> Factor (2).** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| **(3) The risks of litigation for Plaintiffs are substantial.** | Lead Pl.'s Mem. In Support of Attorneys' Fees at 12 ("Defendant, among other things, asserted that that Plaintiffs failed to adequately allege their claims because Plaintiffs would not have been able to show that Defendant made any materially false or misleading statement, that Defendant acted with scienter, or that Plaintiffs could establish loss causation. Defendant's adamant contention that Plaintiffs would not be able to establish liability and/or damages would likely have contributed to a lengthy and expensive litigation absent the proposed Settlement.").<br><br>Id. at 14-15 ("While Plaintiffs believe that their claims would be borne out by the evidence, they also recognize that they faced hurdles to proving liability. At every stage of the litigation, Defendant would have articulated defenses to Plaintiffs' allegations. As set forth in the Levit Declaration and in the Memorandum in Support of Settlement approval, Defendant claimed it did not make any actionable misstatements. Defendant would also have claimed that the decline in Fuqi's stock | **Goldberger Factor 3: The risk of litigation.**<br><br>The Court's findings regarding Grinnell Factors (4)-(6) and (9) also support Goldberger Factor (3). |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
| --- | --- | --- |
| | price was not related to any materially false or misleading statements in the Registration Statement/Prospectus, and that its actions were contrary to any claim that Marcum had the intent to defraud or mislead anyone. It would have contended that they made all necessary disclosures in the Company's SEC filings about Fuqi's internal controls and that any financial information in the Registration Statement/Prospectus that required restating was only applicable to the first quarter of 2009, which had not been audited by Marcum at the time of the Secondary Offering and was not material and/or did not result in any recoverable loss under the securities laws. Levit Decl. ¶¶ 53-55. Defendant also would contend that if damages were not eliminated, they were severely limited. Regarding the Exchange Act claims, Defendant was adamant that Plaintiffs would be unable to prove that Defendant had actual knowledge that the financials would need to be restated. Moreover, Defendant consistently contended that it did not act with scienter and therefore the Exchange Act claims could not succeed."). | |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| **(4)Representation of class counsel is of high quality.** | Lead Pl.'s Mem. In Support of Attorneys' Fees at 16 ("Lead Counsel and Additional Counsel have a long history of being actively engaged in complex federal civil litigation, particularly the litigation of securities class actions. Such experience in the field allowed Lead Counsel and Additional Counsel to identify the complex issues involved in this case and to formulate strategies to effectively prosecute them. It took a great deal of skill to achieve a settlement at this level in this particular case. The quality and vigor of opposing counsel is also significant in considering the quality of services rendered by plaintiffs' counsel, as measured by the result achieved."). | **<u>Goldberger</u> Factor 4: The quality of representation.** |
| **(5) The requested attorneys' fees are reasonable in relation to Parties' settlement.** | Lead Pl.'s Mem. In Support of Attorneys' Fees at 2-3 ("If approved in full, the fee requested will be a negative multiplier of 0.88 of Plaintiffs' Counsel's combined lodestar."); <br><br> <u>id.</u> at 16 ("The fee requested in this case – one-third of the proposed Settlement – is reasonable and falls in line with fees | **<u>Goldberger</u> Factor 5: The requested fee in relation to the settlement.** <br><br> **<u>See also</u> <u>Goldberger</u>, 209 F.3d at 50 (stating that "the lodestar remains useful" and "we** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | awarded in comparable actions in this Circuit.") (citations omitted). | **encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage.");**<br><br>**In re Hi-Crush Partners L.P. Securities Litig., No 12-Civ-8557, 2014 WL 7323417, at * 12 (S.D.N.Y. Dec. 19, 2014) ("In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund.") (collecting cases).** |
| **(6) Requested attorneys' fees are not contrary to public policy.** | Lead Pl.'s Mem. In Support of Attorneys' Fees at 18 ("Plaintiffs' counsel in these types of cases are typically retained on a contingent basis, largely due to the huge commitment of time and expense required. The typical class representative is unlikely to be able to pursue long | **Goldberger Factor 6: Public policy considerations.** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | and protracted litigation at his or her own expense, particularly with the knowledge that others similarly situated will be able to "free ride" on these efforts at no cost or risk to themselves. . . . Thus, 'public policy favors the granting of [attorney] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions.'") (citation omitted). | |
| **ATTORNEYS' EXPENSES**<br><br>**The Court finds that expenses in this matter are reasonable.** | Lead Pl.'s Attorneys' Fees Mem. At 22 ("Plaintiffs' Counsel respectfully request reimbursement of $24,523.02 in expenses incurred while prosecuting this Action. Plaintiffs' Counsel have submitted separate attestations regarding the accuracy of these expenses, which are properly recovered by counsel."). | **"[I]t is well established that expenses are properly recovered by counsel." In re Hi-Crush Partners L.P. Securities Litig., No. 12-Civ-8557, 2014 WL 7323417, at *18 (S.D.N.Y. Dec. 19, 2014).** |

**Having conducted the Goldberger analysis, the Court finds the requested attorneys' fees of $366,300, or one-third of the Settlement Amount, including reasonable and necessary expenses of $24,523.02, to be reasonable and the attorneys' fees are HEREBY APPROVED.**

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| **INCENTIVE AWARDS** Requested Incentive Awards are reasonable and justified to compensate Class Representatives for the services they provided and the risks they incurred during the course of the class action litigation. | Lead Pl.'s Attorneys' Fees Mem. at 24 ("[E]ach of the four members of the Lead Plaintiff PR Group requesting compensation have been fully committed to pursuing the claims of the Class against the Defendant during the time this case has been pending. In devoting substantial effort and time to this Action on behalf of the Class, they each reviewed filings and communicated with Plaintiffs' Counsel, including during the settlement negotiations. These are precisely the types of activities found to support reimbursement to representative plaintffs [sic]."). | **"Incentive awards are not uncommon in class action cases and are within the discretion of the court. Courts look for the existence of 'special circumstances' when determining whether an award is justified and, if so, in what amount." Factors to consider include: 'the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by the** |

| **COURT FINDING** | **EVIDENCE FROM SUBMISSIONS** | **LEGAL REQUIREMENT(S) SATISFIED** |
|---|---|---|
| | | **plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), and other burdens sustained by the plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery.' In Re AOL Time Warner ERISA Litig., No. 02 Civ. 08853, 2007 WL 3145111, at *2 (S.D.N.Y. Oct. 26, 2007) (citing Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).** |
| **The Lead Plaintiff awards of $3,000.00 to the Puerto Rico Government Employees and Judiciary Retirement Systems Administration and $1,500 each to Craig B. Laub, J.D. Pisut, and Sandra Redfern are reasonable, and the awards are therefore APPROVED.** | | |

**The Fairness Hearing of January 8, 2018 and this Memorandum and Order constitute the Court's findings and rulings in this**

matter.

This Action is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to terminate all open Motions and close the docket in this case.

SO ORDERED.

Dated: New York, New York
February 1, 2018

Deborah A. Batts
Deborah A. Batts
United States District Judge