UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PUERTO RICO GOVERNMENT JUDICIARY           :
EMPLOYEES RETIREMENT SYSTEM                :
ADMINISTRATION, CRAIG B. LAUB, J.D.        :
PISUT and SANDRA REDFERN,                  :      15 Civ. 01938 (DAB)
                                           :
                    Plaintiffs,           :
                                           :
  -against-                               :
                                           :
                                           :
MARCUM, LLP, as successor to STONEFIELD    :
JOSEPHSON, INC.,                           :
                                           :
                    Defendant.            :
------------------------------------------------------------------------X

# MEMORANDUM OF LAW
# IN SUPPORT OF LEAD PLAINTIFF'S MOTION
# TO DISTRIBUTE THE NET SETTLEMENT FUND

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
450 Seventh Avenue, 38th Floor
New York, NY  10123
Telephone:  212/279-5050
Fax:  212/279-3655

**Lead Counsel for Lead Plaintiff PR Group**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

I.     INTRODUCTION .................................................................................................................1

II.    BACKGROUND ...................................................................................................................3

       A.     The Stipulation..............................................................................................................3

       B.     Notice to the Settlement Class .....................................................................................4

III.   CLAIMS ADMINISTRATION.............................................................................................6

IV.    ARGUMENT.........................................................................................................................7

              A.     The Court Should Approve Angeion's Administrative Determinations...................7

                     1.     Timely and Valid Claims ..................................................................................7

                     2.     Untimely But Otherwise Eligible Claims .........................................................8

                     3.     Deficient and Ineligible Claims ........................................................................9

                     4.     New Claims in the Marcum Litigation and Valid Claims in the
                            *Fuqi* Action ....................................................................................................11

              B.     The Court Should Authorize Distribution of the Net Settlement Fund ..................11

              C.     The Release of Claims ............................................................................................13

              D.     The Court Should Authorize Payment of Angeion's Fees and Expenses for
                     Claims Administration ............................................................................................14

              E.     Retention and Destruction of Proof of Claim Forms and Other Documents .........15

V.     CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                                                 **Page(s)**

*In re Authentidate Holding Corp. Sec. Litig.*,
 No. 05 Civ. 5323 (LTS), 2013 WL 324153 (S.D.N.Y. Jan. 25, 2013) ................................. 9

*In re Gilat Satellite Networks, Ltd.*,
 No. CV-02-1510 (CPS) (SMG), 2009 WL 803382 (E.D.N.Y. Mar. 25, 2009) ................... 9

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
 246 F.3d 315 (3d Cir. 2001) ............................................................................................... 9

*Zients v. LaMorte*,
 459 F.2d 628 (2d Cir. 1972) ............................................................................................ 8, 9

## I.  INTRODUCTION

On February 1, 2018, the Court granted final approval to the Settlement of the above-captioned securities class action brought by Lead Plaintiff on behalf of the Class.[1] *See* Memorandum & Order ("Final Approval Order"). ECF No. 35.

The Court-appointed Claims Administrator, Angeion Group ("Angeion"), has advised Lead Counsel that it has now completed all analyses and accounting procedures in connection with the submitted claims and has finalized its determination of which claims are authorized and which are ineligible pursuant to the terms of the Settlement. *See* Declaration of Markham Sherwood in Support of Lead Plaintiff's Motion to Distribute Net Settlement Fund (the "Sherwood Decl.").[2] All that remains to complete the Settlement process is to distribute the Net Settlement Fund to the Authorized Claimants.

Now, pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiff, on behalf of the Class, respectfully submits this Memorandum of Law in Support of its Motion to Distribute the Net Settlement Fund, wherein Lead Plaintiff seeks, *inter alia,* that the Court: (i) approve Angeion's administrative determinations accepting and rejecting claims submitted in connection with the Settlement of this Action as stated in the Sherwood Decl.; (ii) authorize the Claims Administrator to deem timely, all otherwise eligible claims that were submitted after the

---

[1] Unless otherwise indicated, all capitalized terms used herein shall have the meaning defined in the Stipulation of Settlement and attached exhibits filed with the Court on May 25, 2017 (the "Stipulation" or "Settlement Agreement") (ECF No. 16-1), the Order Preliminarily Approving Settlement and Providing for Notice of Proposed Settlement (the "Preliminary Approval Order") (ECF No. 17), or the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Notice") (ECF No. 25, Exhibit A).

[2] The Sherwood Decl. is attached as Exhibit 1 to the Declaration of Lawrence D. Levit in Support of Lead Plaintiff's Motion to Distribute the Net Settlement Fund filed concurrently herewith.

November 24, 2017 claims filing deadline to the date of the Sherwood Decl.; (iii) approve the distribution of the Net Settlement Fund established by the Settlement of this Action, as calculated under the Plan of Allocation, after deducting all payments previously allowed from the Settlement Fund and the payments requested herein, and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, to Authorized Claimants whose Proofs of Claim have been accepted as valid by Angeion and approved by the Court, including those Authorized Claimants who were previously determined to have submitted valid claims in the related action *In re Fuqi International, Inc. Sec. Litig.*, No. 10 Civ. 2515 (DAB) (S.D.N.Y.) (the "*Fuqi* Action"), as set forth in Part Five of Exhibit B to the Sherwood Decl.; (iv) approve the payment of $28,218.50 to the Claims Administrator from the Net Settlement Fund for the balance of its fees and expenses incurred in connection with the services performed in processing the Proofs of Claim and in administering the Settlement, as set forth in Exhibit D of the Sherwood Decl., and authorize Lead Counsel to approve payment from the Net Settlement Fund to the Claims Administrator, without further order of the Court, an amount of up to $39,093.07 for the fees and costs the Claims Administrator incurs in connection with performing the work to complete the distribution and administration process; an estimate of these fees and costs is set forth in Exhibit E of the Sherwood Decl.; (v) direct that Authorized Claimants who do not cash their distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement and the funds allocated to all stale-dated checks will be available to be distributed to other Authorized Claimants in a redistribution; (vi) approve the recommended plan for the disposition of any funds remaining in the Net Settlement Fund after the distribution requested herein; (vii) authorize the destruction of claim forms and records in paper form one year after final distribution of the Net Settlement Fund, and claim forms and

records in electronic form three years after final distribution of the Net Settlement Fund; and (viii) release all Persons who were involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim filed in this Action, or who were otherwise involved in the administration, taxation or distribution of the Settlement Fund or the Net Settlement Fund, including Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel, from any and all claims arising out of such involvement and bar all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration, taxation or distribution of the Settlement, beyond the amount allocated to Authorized Claimants.

## II.     BACKGROUND

### A.  The Stipulation

The Stipulation provided for an all-cash payment of $1.1 million to compensate members of the Class and to pay attorneys' fees and expenses as awarded by the Court. Stipulation ¶¶ 2.1, 2.3, 5.2. On February 1, 2018, the Court granted final approval of the Settlement between and among Lead Plaintiff, on behalf of the Class, and Defendant under the terms set forth in the Stipulation and dismissed this Action with prejudice. *See* Final Approval Order (ECF No. 35). The Court also awarded Lead Counsel attorneys' fees of 33% of the Settlement Fund plus reimbursement of Plaintiffs' Counsel's litigation expenses in the amount of $24,523.02 and awards to the members of the Lead Plaintiff group totaling $7,500. *Id.* at 33-34.  The Net Settlement Fund is now ready to be distributed to Authorized Claimants.

The Stipulation provides for the distribution of the Net Settlement Fund, in accordance with the Court-approved Plan of Allocation, among Authorized Claimants who purchased or otherwise acquired shares of common stock of Fuqi International, Inc. ("Fuqi") between May 15, 2009 through and including March 27, 2011, and who were damaged thereby, and also includes a Subclass of all those who purchased or otherwise acquired Fuqi common stock pursuant to or traceable to a Secondary Offering on or about July 22, 2009 and who were damaged thereby.[3] On behalf of Lead Plaintiff, Lead Counsel retained Angeion as the Claims Administrator. Angeion has extensive experience in handling the administration of complex settlements of securities class actions. The Court approved the selection of Angeion in its Preliminary Approval Order. ECF No. 17 at 3.

### B. Notice to the Settlement Class

Pursuant to the Court's Preliminary Approval Order, beginning on June 27, 2017, the Claims Administrator disseminated copies of the Notice and Proof of Claim to potential Class Members. *See* ECF No. 19-1, ¶¶ 2-5; ECF No. 25, Exhibit A, ¶¶ 3-7. Angeion also caused the Summary Notice to be published in *Investor's Business Daily* and over *PR Newswire*. ECF No. 19-1, ¶ 6. Moreover, Angeion posted downloadable copies of, *inter alia*, the Notice and Proof of Claim on the Web site it created and maintains for the Settlement at http://www.fuqiclasssettlement.com. *Id.* at ¶ 7.[4] In response to the notice efforts, through December 20, 2022, Angeion received and processed a total of 2,223 newly submitted claims from potential Class Members in connection with this Action. Sherwood Decl. ¶ 10.

---

[3] References to the Class herein include the Subclass unless indicated otherwise.

[4] Angeion also posted copies of the Settlement Agreement with exhibits and the Preliminary Approval Order on the Web site.

Previously, Lead Plaintiff, on behalf of the Class and Subclass, had entered into a settlement with Fuqi and other defendants in a related action. *See Fuqi* Action, ECF No. 115. The claims asserted in this Action, against Defendant Marcum, LLP, arise from the same facts that were alleged against other defendants in the *Fuqi* Action. In connection with the settlement of the *Fuqi* Action, notice was provided to the Class and Subclass, who were instructed to submit claim forms in order to participate in that settlement and receive a portion of that settlement fund. *See Fuqi* Action ECF No. 109-1, Exhibit A. As a result of the notice provided in the *Fuqi* Action, 3,251 valid claim forms were submitted, which had a Recognized Loss greater than zero. *Fuqi* Action ECF No. 120-1, ¶¶ 21-22. The Notice in this Action informed Class Members and Subclass Members that if they had submitted a valid claim form in the *Fuqi* Action, they did not need to submit another claim form in this Action to participate in the Settlement. ECF No. 22-3, ¶ 14 & Exhibit A, p. 1.

The Notice also provided background of the Action, described the details of the Settlement and the process leading up to the Settlement, gave notice of the Settlement Hearing, and provided instructions for Class Members regarding submissions of claims, requests for exclusion from the Settlement, objection to the terms of Settlement and/or the application for attorneys' fees and reimbursement of expenses, and attendance at the Settlement Hearing. ECF No. 22-3, Exhibit A.

### III. CLAIMS ADMINISTRATION

Pursuant to the Stipulation, the Court's Preliminary Approval Order, and the Notice, unless they had previously submitted a valid claim form in connection with the *Fuqi* Action, all Class Members wishing to be eligible to participate in the Settlement Fund were required to submit Proof of Claim forms, postmarked on or before November 24, 2017.

As explained in detail in the accompanying Sherwood Decl., Angeion received a total of 2,223 Proof of Claim forms in connection with this Action, not including claims submitted in connection with the *Fuqi* Action. Sherwood Decl. ¶ 10. Angeion has prepared detailed ledgers of: (i) all valid and timely claims filed by Authorized Claimants in this Action, separate from those claims previously submitted in the *Fuqi* Action (Sherwood Decl. Ex. B, Part One); (ii) claims that were submitted after the filing deadline but by the date of the Sherwood Decl. that are otherwise valid ("Late Claims") (Sherwood Decl. Ex. B, Part Two); (iii) rejected claims that were deemed ineligible, including claims that were duplicates of claims received in the *Fuqi* Action (Sherwood Decl. Ex. B, Part Three); (iv) claims that had no Recognized Loss (Sherwood Decl. Ex. B, Part Four); and (v) all valid claims filed in the *Fuqi* Action that were eligible to receive a distribution and the valid claims filed in the Marcum Litigation that are eligible to receive a distribution (Sherwood Decl. Ex. B, Part Five).

Angeion made substantial efforts to contact claimants that had submitted deficient claims (such as lacking the required information or documentation to substantiate the claimant's transactions during the Class Period) and informed them that they had the opportunity to cure any deficiency that could be cured. Sherwood Decl. ¶¶ 14-18. Angeion mailed deficiency letters to claimants describing the defect(s) with his, her or its claim and stating what, if anything, was necessary to cure the claim. *Id.* ¶¶ 14-15; Sherwood Decl. Ex. A (sample of a Transaction

6

Report). Angeion also contacted the banks, brokers and other nominees who filed claims and transactional data electronically to confirm their submissions and notified the filer of any deficiencies or claims that were ineligible. *Id.* ¶¶ 15-16. Claimants who submitted deficient claims were allowed the opportunity to perfect those claims. Sherwood Decl. ¶ 16. The deficiency letters and reports also informed the claimant that failure to cure the deficiencies may lead to rejection of his, her or its claim. *Id.*

Angeion has determined that 865 new claims received in this Action are acceptable in whole or in part. Sherwood Decl. ¶ 28. Angeion has also determined that 291 claims received in this Action were ineligible to participate in the Settlement because the claims: (1) did not indicate any eligible purchases of shares of Fuqi common stock during the Class Period; or (2) were duplicative claims of claims received in the *Fuqi* Action. In addition, 1,067 claims received in this Action did not result in a Recognized Loss. Sherwood Decl. ¶¶ 24, 26. These latter claimants received a No Loss Letter. *Id.* ¶ 26; *see* Sherwood Decl. Ex. C.

IV.   **ARGUMENT**

    **A.  The Court Should Approve Angeion's Administrative Determinations**

Lead Plaintiff respectfully requests that the Court approve Angeion's administrative determinations accepting and rejecting claims as stated in the Sherwood Decl.

       **1.   Timely and Valid Claims**

There were 794 Authorized Claimants who submitted timely and valid claims postmarked on or before the Court-approved claims filing deadline of November 24, 2017, who did not previously submit a claim in the *Fuqi* Action. Sherwood Decl. ¶ 20. The aggregate Recognized Loss of these Authorized Claimants (which does not include the previously submitted valid *Fuqi* Action claims) is $21,872,224.01. *Id*.

Accordingly, Lead Plaintiff respectfully requests that the Court approve the 794 Authorized Claimants listed in Exhibit B, Part One to the Sherwood Decl., which does not include those claimants who previously submitted a valid claim in the *Fuqi* Action.

### 2.  Untimely But Otherwise Eligible Claims

Angeion received 451 Proofs of Claim after the November 24, 2017 Proof of Claim submission deadline through the date of the Sherwood Decl. (i.e., Late Claims). Sherwood Decl. ¶ 21. Angeion processed all Late Claims and has determined that the total number of Authorized Claimants submitting otherwise valid Late Claims is 71 with an aggregate Recognized Loss of $4,020,474.28. *Id*. These Late Claims (listed in Exhibit B, Part Two to the Sherwood Decl.) were received by Angeion while the processing of timely claims was ongoing, and due to the amount of time needed to process the claims received, the processing of these Late Claims did not delay the completion of the claims administration process or the distribution of the Net Settlement Fund. Sherwood Decl. ¶ 22.  The Recognized Loss of the timely valid Claims and the Late Claims totals $25,892,698.29, which does not include those claimants who previously submitted a valid claim in the *Fuqi* Action. *Id.* ¶ 23.

Until the Net Settlement Fund is actually distributed, this Court retains broad and inherent equitable powers to include claims that were submitted late. *See Zients v. LaMorte*, 459 F.2d 628, 630-31 (2d Cir. 1972) ("[W]here, as here, all the equities are on the side of the claimants, the fund has not been distributed and the administration of the fund would be insignificantly hampered by allowing these few late claims, appellants should be permitted to participate in the fund."). Lead Plaintiff believes that, when the equities are balanced, it would be unfair to prevent an otherwise eligible claim from participating in the Net Settlement Fund solely because it was submitted after the cut-off date, when it was submitted while claims were still

being processed.[5] *See In re Authentidate Holding Corp. Sec. Litig.*, No. 05 Civ. 5323 (LTS), 2013 WL 324153, at *1-2 (S.D.N.Y. Jan. 25, 2013) (courts have "inherent power to accept late claims"; court allowed late claimants to receive distribution from settlement fund); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS) (SMG), 2009 WL 803382, at *6 (E.D.N.Y. Mar. 25, 2009) (allowing payment of late claims); *see also In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001) (cutoff date for filing claims does not preclude recovery by deserving late claimant). Moreover, payment of the Late Claims will not cost Defendant any additional money nor will payment of these Late Claims materially prejudice or delay payment to the timely claimants.

However, in order to facilitate the efficient distribution of the Net Settlement Fund, there must be a final cut-off date after which no other claims may be accepted. Accordingly, it is respectfully requested that any distribution order provide that no claim submitted on or after the date of the Sherwood Decl. may be accepted and that no further adjustments to claims may be made after that date. Sherwood Decl. ¶ 22.

Accordingly, Lead Plaintiff respectfully requests that the Court approve Angeion's administrative recommendations with respect to the Late Claims listed in Exhibit B, Part Two to the Sherwood Decl.

### 3. Deficient and Ineligible Claims

For all deficient claims initially identified, Angeion sent a Transaction Report to electronic filers, advising the claimants of the deficiency, the reason for the deficiency, and

---

[5] Courts have the equitable power to include late-filed claims as part of a settlement distribution even where the parties agreed to a claims filing deadline pursuant to the terms of a settlement agreement. *See, e.g.*, *Zients*, 459 F.2d at 630 ("[u]ntil the fund created by the settlement is actually distributed, the court retains its traditional equity powers.").

9

giving them the opportunity to cure the deficiency within 14 days of the date of the notice. *Id.* ¶¶ 14-16, Ex. A.[6] These deficiency notices informed claimants that this was the only opportunity to cure the deficiencies in his/her/its claim. *Id.* ¶¶ 15-16. Angeion responded to questions posed by the claimants who received Transaction Reports and reviewed the information and documents provided by the claimants to determine whether the deficiency was cured. *Id.* ¶ 17. Angeion then did a quality assurance review to make certain that all claimants whose claims were rejected were notified of the claim's status and did an audit of the deficient claims and other rejected claims. *Id.* ¶ 18.

Angeion also determined that certain claims submitted had a Recognized Loss amount of zero as calculated under the Plan of Allocation. Angeion sent a No Loss Letter to each of these claimants, explaining that their submitted claim had no loss. *Id.* ¶ 26.

After taking these steps, Angeion has identified 1,358 new claims filed in the Marcum Litigation that it recommends for rejection. *Id.* ¶¶ 24, 26. These claims were rejected for the following reasons: (i) claims that did not result in a Recognized Loss as calculated under the Court-approved Plan of Allocation (1,067 claims); (ii) claims that did not involve purchases during the Settlement Class Period (41 claims); and (iii) duplicate claims of claims received in the *Fuqi* Action (250 claims). *Id.* ¶¶ 24, 26.

Angeion sent either a No Loss Letter or a Transaction Report to each of these claimants. *Id.* ¶¶ 24-26.

---

[6] No paper claims received were denied for missing pertinent information and/or documentation. *Id.* ¶ 13.

### 4. New Claims in the Marcum Litigation and Valid Claims in the *Fuqi* Action

As stated, a new claim submission was not required to participate in the Marcum Litigation Settlement if a valid claim had been submitted in the *Fuqi* Action. Angeion received a total of 9,264 claims in connection with *Fuqi* Action. *Id.* ¶ 27.

A total of 2,745 claims were deemed valid and eligible to receive a distribution in the *Fuqi* Action, with a total Recognized Loss of $117,052,755.80.[7] A total of 865 new claims from the Marcum Litigation are valid, non-deficient claims. Pursuant to the Plan of Allocation, the total Recognized Loss amount for all 3,601 valid, non-deficient claims from the *Fuqi* Action and the Marcum Litigation combined is $140,524,769.49. *Id.* ¶ 28. Attached as Exhibit B, Part Five to the Sherwood Decl. is a list of all valid, non-deficient claims filed in the *Fuqi* Action and valid, non-deficient new claims filed in the Marcum Litigation.

### B. The Court Should Authorize Distribution of the Net Settlement Fund

Pursuant to ¶ 5.1 of the Stipulation, the Claims Administrator "shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund . . . to Authorized Claimants pursuant to the Plan of Allocation." ECF No. 16-1. The Net Settlement Fund is ready to be distributed at this time. Lead Counsel respectfully requests that the Court direct Angeion to distribute the Net Settlement Fund to the claimants whose new claims filed in this Action Angeion has administratively determined to be valid (those listed in the Sherwood Decl., Exhibit B, Part One and the Late Claims listed in Sherwood Decl., Exhibit B, Part Two, if the extension is approved by the Court), and those claimants who previously submitted a valid claim in the *Fuqi* Action (included in Sherwood Decl., Exhibit B,

---

[7] Nine (9) of the 2,745 claimants who received a check in the *Fuqi* Action with a total Recognized Loss of $2,420,684.60 were institutional funds which returned their check. *Id.* ¶ 28.

Part Five) and who would receive a distribution amount of at least $20.00 pursuant to the Court-approved Plan of Allocation in the Notice. *See* Notice at 11-14 (ECF No. 25, Exhibit A). If these administrative determinations are approved, each of these claimants will receive a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Loss compared to the total Recognized Loss of all Authorized Claimants, which includes the Late Claims approved by the Court (the "Distribution"). *Id.*

It may be expected that not all of the payments to be distributed to Authorized Claimants (including the Late Claims approved by the Court) will be cashed promptly. In order to encourage Authorized Claimants to promptly cash their Distribution checks, and to avoid or reduce future expenses relating to unpaid checks, Lead Plaintiff respectfully requests that the Distribution checks bear this notation "CASH PROMPTLY, VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED 120 DAYS AFTER ISSUE DATE." Authorized Claimants who do not cash their Distribution checks within the time allotted shall irrevocably forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated checks shall be available in a redistribution to other Authorized Claimants.

Consistent with the terms of the Stipulation and the Court-approved Plan of Allocation in the Notice, Lead Plaintiff respectfully requests that the following procedures apply to funds remaining in the Net Settlement Fund after the Distribution occurs: (i) the Claims Administrator is to make reasonable and diligent efforts to have Settlement Class Members who are entitled to participate in the Distribution of the Net Settlement Fund cash their Distribution checks; (ii) if despite the efforts of the Claims Administration, any balance remains in the Net Settlement Fund, no less than six months after the initial Distribution, by reason of uncashed Distribution checks or otherwise, then the remaining balance shall be redistributed to Settlement Class

Members who have cashed their initial Distribution check and who would receive at least $20.00 from such redistribution; (iii) provided that, after consulting with Lead Counsel, the Claims Administrator and Lead Counsel determine that a redistribution is feasible and the remaining funds in the Net Settlement Fund can be distributed in an equitable and economic fashion. The redistribution shall be conducted in the same manner consistent with the Plan of Allocation, after payment of any unpaid costs or fees incurred in administering the Settlement, including the estimated costs of the redistribution, and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees. If a redistribution of the Net Settlement Fund is deemed not to be feasible or if a redistribution occurs and, thereafter, funds remain in the Net Settlement Fund, the Claims Administrator, following consultation with Lead Counsel, shall donate, pursuant to the doctrine of *cy pres*, any remaining funds in the Net Settlement Fund, after payment of any further administration expenses and taxes, to the Legal Aid Society of New York City. *See* Stipulation ¶ 5.6; Notice at 14.

### C. The Release of Claims

In order to allow the full and final distribution of the Net Settlement Fund, it is respectfully requested that the Court bar any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration, taxation or distribution of the Settlement, beyond the amount allocated to Authorized Claimants, and to provide in its order that all Persons who were involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim filed in this Action, or who were otherwise involved in the administration, taxation or distribution of the Settlement Fund or Net Settlement Fund, including Lead Plaintiff, Lead Counsel, the Claims Administrator

and the Escrow Agent, be released from all claims arising out of such involvement.

### D. The Court Should Authorize Payment of Angeion's Fees and Expenses for Claims Administration

Angeion agreed to be Claims Administrator in exchange for payment of its fees and out-of-pocket expenses in connection with administering the Settlement and has incurred costs and fees to date of $138,091.33. Sherwood Decl. ¶ 33. The Stipulation and Preliminary Approval Order authorized payment from the Settlement Fund of the fees and costs incurred in connection with the notice to the Class and the claims administration. Stipulation ¶¶ 2.3, 5.2; Preliminary Approval Order at 8. Such reasonable and customary fees and costs include Angeion performing claims administration services in connection with the Net Settlement Fund distribution, as well as an estimate of additional fees and expenses required to complete the administration and initial distribution of the Net Settlement Fund, including, but not limited to, calculating distribution amounts, printing and mailing checks, monitoring uncashed and undeliverable checks, making telephone calls to Authorized Claimants with uncashed checks and searching for current addresses if checks are undeliverable.

As set forth in the Sherwood Decl., to date, Angeion has incurred $138,091.33 in administration fees and costs for which it has been paid $109,872.83. Sherwood Decl. ¶ 33. Accordingly, there is an outstanding balance of $28,218.50 payable to Angeion. Attached as Exhibit D to the Sherwood Decl. are invoices reflecting those unpaid fees and unreimbursed expenses incurred thus far during the administration process. In addition, Angeion will perform additional work and incur expenses through distribution of the Net Settlement Fund and completion of the Marcum Litigation administration. The fees and expenses expected to be incurred through the end of the initial distribution are estimated to be $39,093.07. A detailed estimate of these fees and costs are attached to the Sherwood Decl. as Exhibit E. *See also*

Sherwood Decl., ¶¶ 33-35.

Lead Plaintiff respectfully requests approval of payment to the Claims Administrator from the Net Settlement Fund of $28,218.50 for the fees and expenses Angeion has incurred to date but has not yet been paid in connection with the services performed in processing the Proofs of Claim and in administering the Settlement, as set forth in Exhibit D of the Sherwood Decl., and authorization for Lead Counsel to approve payment from the Net Settlement Fund to the Claims Administrator, without further order of the Court, an amount of up to $39,093.07 for the costs the Claims Administrator incurs in connection with performing the work to complete the distribution and the administration process; an estimate of these costs is set forth in Exhibit E of the Sherwood Decl.

### E. Retention and Destruction of Proof of Claim Forms and Other Documents

Lead Plaintiff respectfully requests that the Court authorize Angeion to destroy claim forms and records in paper form one year after final distribution of the Net Settlement Fund and to destroy claim forms and records in electronic form three years after final distribution of the Net Settlement Fund.

### V. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that this Court issue the accompanying proposed Order Authorizing Distribution of the Net Settlement Fund, granting the relief sought herein.

Dated: December 22, 2022                    Respectfully submitted,

                                          **ABRAHAM, FRUCHTER & TWERSKY, LLP**

By: /s/ Lawrence D. Levit
     Mitchell M.Z. Twersky
     Lawrence D. Levit
     450 Seventh Avenue, 38th Floor
     New York, NY 10123
     Telephone: (212) 279-5050
     Facsimile: (212) 279-3655
     mtwersky@aftlaw.com
     llevit@aftlaw.com

     **Lead Counsel for Lead Plaintiff PR Group**